UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CHERRONE  GEORGE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00811-JMS-DML |
| | ) | |
| WRIGHT, LERCH & LITOW, LLP | ) | |
| Attorneys at Law, | ) | |
| | ) | |
| *Defendant*. | ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Cherrone George brings the instant suit against Defendant Wright, Lerch & Litow,

LLP Attorneys at Law ("Wright") under the Federal Debt Collection Practice Act ("FDCPA"), 15

U.S.C. § 1692, *et. seq*.  She argues that she received a dunning letter from Wright that is missing

the total amount due which she claims is a violation of the FDCPA.  [Filing No. 1.]  Ms. George

filed a Motion for Summary Judgment, [Filing No. 49], and Wright filed a Cross-Motion for

Summary Judgment, [Filing No. 56].  After a conference call with the presiding Magistrate Judge

on November 15, 2016, the parties stipulated that the Court will determine all issues of fact and

law made in connection with their pending motions for summary judgment and will issue findings

of fact, conclusions of law, and a final judgment pursuant Fed. R. Civ. P. 52.  [Filing No. 67.]  The

parties indicated that they submitted all pertinent legal arguments and evidence in their summary

judgment briefing.  [Filing No. 67.]  Because the Court is the fact finder, it is not constrained to

the standard for summary judgment and accordingly issues its findings of fact and conclusions of

law below.

## II.
### FINDINGS OF FACT[1]

On April 15, 1995, Ms. George entered into a retail installment contract for "personal, family, or household purposes," which was later assigned to Credit Acceptance Corporation ("Credit Acceptance"). [Filing No. 50-1 at 1; Filing No. 55-3 at 1.] Ms. George was unable to make her payments and Credit Acceptance filed a claim against her in small claims court. [Filing No. 55-3 at 1.] After she failed to appear or otherwise respond to the complaint, Credit Acceptance obtained a judgment against Ms. George on February 22, 1996 in the amount of $4,434.53 plus costs. [Filing No. 55-3 at 2.] Post-judgment interest has accrued on the outstanding judgment since that date. [Filing No. 55-3 at 2.] In 2000, Credit Acceptance retained Wright to collect the outstanding debt from Ms. George. [Filing No. 55-3 at 2.] Wright attempted to contact Ms. George on several occasions regarding the debt. [Filing No. 55-3 at 2.] A representative from Wright met with Ms. George in person at two proceedings supplemental in 2010 and 2011. [Filing No. 55-3 at 2.] On December 3, 2014, Ms. George received a letter from Wright, which provided:

Our client:  Credit Acceptance Corporation
Original Creditor:
Original Account Number: █8999
Wright, Lerch & Litow File No.:  7546

Dear Cherrone M. George-Herring:

Our client has given us the authority to offer a settlement to pay off the above account. Our client will settle this matter for 75% of the balance. This offer expires 30 days from issuance of this letter.

Call now to take advantage of this opportunity at 260-423-6655.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION IS FROM A DEBT COLLECTOR AS THAT TERM IS DEFINED IN FEDERAL LAW.

Thanks,

Collection Team

---

[1] Any finding of fact should be deemed a conclusion of law to the extent necessary.

[Filing No. 50-2.]

The letter does not advise Ms. George as to the precise amount of the settlement demand. However, the debt in question accrued interest on a daily basis, so seventy-five percent of the balance would vary depending upon when or if Ms. George contacted Wright. The letter does not contain inaccurate or false information.

### III.
### CONCLUSIONS OF LAW[2]

### A. Standing

At the outset, the Court will first determine whether Ms. George has standing to pursue her FDCPA claim. Wright argues that Ms. George lacks standing because she simply asserts a bare procedural violation and does not allege that she was misled and/or deceived by the letter. [Filing No. 60 at 21.] Wright argues that a recent Third Circuit Court of Appeals case, *Bock v. Pressler & Pressler, LLP*, 2016 WL 4011150 (3d Cir. 2016), interpreted the Supreme Court decision in an FDCPA matter, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), and held that a plaintiff cannot treat a bare procedural violation that may result in no harm as an Article III injury in fact. [Filing No. 60 at 21.]

Ms. George responds that "since the standard is whether the letter would confuse or mislead an unsophisticated consumer, and not the plaintiff consumer herself, it is unnecessary for Plaintiff to present evidence that she herself was misled." [Filing No. 61 at 2.] She further asserts that *Bock* is a non-precedential opinion that remanded the case to determine the element of "concreteness," and that *Spokeo* did not "overturn, diminish, or even address the unsophisticated consumer standard as it applies to the FDCPA." [Filing No. 61 at 3.]

---

[2] Any conclusion of law should be deemed a finding of fact to the extent necessary.

Standing ensures that the parties at issue have a "vested interest in the case" and guarantees that the Court only adjudicates "cases and controversies." *Cabral v. City of Evansville, Ind.*, 759 F.3d 639, 641 (7th Cir. 2014). "To satisfy Article III's standing requirements, a litigant must show that (1) it has suffered an actual or imminent concrete and particularized 'injury in fact'; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 641-42 (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

In *Spokeo*, the Supreme Court reversed the district court's opinion on an Article III standing issue regarding a violation of the Fair Credit Reporting Act ("FCRA"). As to the injury in fact element, the Supreme Court noted that an injury needed to be both "particularized" – meaning it must affect the person in a personal and individual way – and "concrete" – meaning it must be *de facto*, or that it must actually exist. 136 S.Ct. at 1548. It indicated that a plaintiff cannot argue that he or she is harmed simply because the defendant violated a particular statute when such violation might not result in any concrete harm. The Supreme Court further held that "a procedural right granted by statute can be sufficient in some circumstances" and "a plaintiff need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549. An Eleventh Circuit Court of Appeals case, *Church v. Accretive Health, Inc.*, 2016 WL 3611543 (11th Cir. 2016), is instructive to the issue at hand. In that case, the Eleventh Circuit held that the plaintiff sustained a concrete injury when she did not receive certain disclosures from the creditor as required by the FDCPA. *Id.* at *3. It noted that "Congress has created a new right – the right to receive the

required disclosures in communications governed by the FDCPA – and a new injury – not receiving such disclosures."[3] *Id.*

While the Seventh Circuit has not addressed the issue of standing in an FDCPA case since *Spokeo*, district courts in this Circuit have done so, and like *Church* have noted that for certain violations under the FDCPA, Congress intended to create a legally cognizable injury. *See Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at * 2 (N.D. Ill. 2016) ("Congress gave consumers a legally protected interest in certain information about debts, and made the deprivation of information about one's debt . . . a cognizable injury. . . . Saenz was harmed by receiving a deficient and allegedly misleading communication from Buckeye – a harm defined and made cognizable by the statute, but a concrete harm nonetheless."); *Quinn v. Specialized Loan Servicing, LLC*, 2016 WL 4264967, at * 5 (N.D. Ill. 2016) ("I conclude that SLS's alleged failure to provide the Quinns with information required under the FDCPA constitutes sufficient concrete harm for purposes of Article III standing.") (listing cases).

Ms. George has sufficiently alleged that she suffered a particularized and concrete injury when Wright sent a letter that she claims violates 15 U.S.C. § 1692e.  The purpose of the statute is to eliminate abusive debt collection practices by prohibiting a debt collector from using "any false, deceptive, misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  The letter was sent in an attempt to collect a debt and according to Ms. George it was allegedly misleading because it was offering to settle the case for seventy-five percent of the balance but it was missing the total amount that she owed or the amount of the settlement demand.  Thus, Ms. George has met the requirements for Article III standing.

---

[3] Although the Eleventh Circuit held that the plaintiff had standing, it affirmed the district court's decision on the merits of the case that the FDCPA did not govern the proceedings because the plaintiff's debt was not in default at the time the defendant issued the letter.

### B. FDCPA Claim

Ms. George argues that Wright's dunning letter is an attempt to collect a debt and that Wright engaged in deceptive practices in violation of the FDCPA when it failed to state "the amount that constituted '75% of the total balance'. . . ." [Filing No. 50 at 7-10.] She claims that her debt has increased substantially for over twenty years because it has been accruing interest daily, and that "'75% of the balance'" could have multiple meanings. [Filing No. 50 at 10-11.] According to Ms. George, "the unsophisticated consumer would not be able to determine the amount of the settlement offer, because the terms are so vague." [Filing No. 50 at 14.] She claims that the letter violates 15 U.S.C. § 1692e and that providing the amount of the debt in the letter is "the most important piece of information . . . ." [Filing No. 50 at 15-17.]

In response to Ms. George's summary judgment motion and in support of its cross-motion for summary judgment, Wright argues that it is entitled to judgment as a matter of law because the letter that Wright sent to Ms. George does not violate 15 U.S.C. § 1692e. [Filing No. 56 at 14-47.] According to Wright, the Seventh Circuit has set forth three categories of 15 U.S.C. § 1692e cases and Wright claims that Ms. George's letter falls under the first category – that the letter is plainly and clearly not misleading. [Filing No. 56 at 16-18 (citing *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012)).] Wright also argues that the letter is not a dunning letter because it is not attempting to collect a debt but simply discussing a settlement offer, and that "there is absolutely nothing false, deceptive, and/or misleading about it." [Filing No. 56 at 18-19; Filing No. 56 at 23.] It further claims that Ms. George cites to case law that is either not relevant or is from jurisdictions that apply a different standard to FDCPA claims. [Filing No. 56 at 21-28; Filing No. 56 at 34-47.] Moreover, Wright claims that even if the letter is analyzed under the second category, it is still entitled to summary judgment because Ms. George failed to produce extrinsic evidence to support her position. [Filing No. 56 at 30-32.] Lastly, Wright argues that to the extent that Ms. George is

6

pursuing claims under 15 U.S.C. §§ 1692d and 1692f, Ms. George failed to raise them in her opening brief. [Filing No. 56 at 32-34.]

In reply in support of her motion for summary judgment and response in opposition to Wright's cross-motion for summary judgment, Ms. George argues that Seventh Circuit precedent has rejected the position that a debt collector can send a letter to a debtor with an invitation to call the debt collector to obtain information regarding the amount due. [Filing No. 57 at 3 (citing *Miller v. McCalla, Raymer, Padrick, Cobb, and Clark, LLC*, 214 F.3d 872 (7th Cir. 2000)).] She asserts that the letter she received is a dunning letter because it is an attempt to collect a debt. [Filing No. 57 at 8-10.] She argues that this letter falls under the plainly misleading category of 15 U.S.C. § 1692e cases, that she does not need to produce extrinsic evidence, and that providing the amount of debt in a letter is "one of the most material . . . pieces of information that could be provided to a consumer." [Filing No. 57 at 4-7; Filing No. 57 at 9-13; Filing No. 57 at 20.] Lastly, she claims for the first time that Wright's letter violates both 15 U.S.C. §§ 1692d and 1692f. [Filing No. 57 at 21-23.]

In reply in support of its cross-motion for summary judgment, Wright reiterates many arguments, including that the letter falls under the first category of 15 U.S.C. § 1692e cases because it was plainly and clearly not misleading and that it fails under the second category because Ms. George failed to provide extrinsic evidence to support her position. [Filing No. 60 at 10-21.]

Because Wright challenges whether the letter that it sent to Ms. George is an attempt to collect a debt, the Court will address this issue first.

### 1. *Dunning Letter*

The Seventh Circuit Court of Appeals does not have a "bright-line rule . . . for determining whether a communication from a debt collector was made in connection with the collection of any

debt." *See, e.g.*, *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010). However, the Seventh Circuit has previously held that "a communication need not make an explicit demand for payment in order to fall within the FDCPA's scope; rather, [] a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA." *Gburek*, 614 F.3d at 385 (citing *Horkey v. J.V.D.B. & Associates, Inc.*, 333 F.3d 769, 774 (7th Cir. 2003). Another relevant factor is the nature of the parties' relationship where, for example, the only relationship that the defendant has with the plaintiff is a defaulted debt. *Gburek*, 614 F.3d at 385.

While Wright's letter to Mr. George may not explicitly demand a payment, its sole purpose is to attempt to collect at least seventy-five percent of Ms. George's debt. Additionally, the only relationship that exists between the parties is that Wright is the creditor and is attempting to collect a debt from Ms. George. Given these considerations, Wright's letter is a dunning letter in an attempt to collect a debt.

        2.   *15 U.S.C. § 1692e*

The Court will now address the merits of Ms. George's FDCPA claim. Although she attempts to resurrect them in her response to Wright's cross-motion, Ms. George has waived her claims with respect to alleged violations under 15 U.S.C. §§ 1692d and 1692f. In her Statement of Claims, Ms. George's only claim is that Wright's letter violated 15 U.S.C. § 1692e. [*See* Filing No. 45.] The Court will therefore proceed accordingly.

The FDCPA prohibits the use of a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "This is a broad prohibition, and while § 1692e has 16 subsections describing ways by which a debt collector could violate the FDCPA, that list is nonexhaustive . . . and a plaintiff need not allege a violation of a specific

subsection in order to succeed in a § 1692e case." *Lox*, 689 F.3d at 822 (citations omitted).  Ms. George contends that the letter violates subsection (2)(A) because it is a "false representation of . . . the character, amount, or legal status of any debt," and subsection (10) because it uses "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e.

"In deciding whether collection letters violate the FDCPA, [the Seventh Circuit Court of Appeals has] consistently viewed them through the eyes of the 'unsophisticated consumer.'" *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (citations omitted).  "The 'unsophisticated consumer' is not a dimwit." *Id.*  She may be uninformed, naive, and trusting, but has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences. *Id.* (citations omitted).  "If a statement would not mislead the unsophisticated consumer, it does not violate the FDCPA . . . ." *Id.* at 645-46.  Thus, "[the] test for determining whether a debt collector violated § 1692e is objective, turning not on the question of what the debt collector knew but on whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003) (citing *Gammon v. GC Servs. Ltd. P'Ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)).

Seventh Circuit precedent treats "the question of whether an unsophisticated consumer would find certain debt collection language misleading as a question of fact." *Lox*, 689 F.3d at 822; *see Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir.1999).  As an outgrowth of this practice, the Seventh Circuit Court of Appeals has determined that there are three categories of 15 U.S.C. § 1692e cases. *Lox*, 689 F.3d at 822; *Ruth v. Triumph Partnerships*, 577 F.3d 790, 800 (7th Cir. 2009).  The first category includes cases in which the allegedly offensive language

is plainly and clearly not misleading, and thus no extrinsic evidence is needed to show that the reasonable unsophisticated consumer would not be confused by the pertinent language. *Lox*, 689 F.3d at 822. The second category of cases includes debt collection language that is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer. *Id.* Under this category, Seventh Circuit precedent provides that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers find the challenged conduct misleading or deceptive. *Id.* The third category are cases involving letters that are plainly deceptive or misleading, and therefore do not require any extrinsic evidence in order for the plaintiff to be successful. *Id.* Ms. George claims that her letter falls under the third category of cases – clearly misleading – while Wright argues that it falls under the first category – plainly and clearly not misleading. Ms. George does not include any extrinsic evidence, such as consumer surveys, as support to demonstrate that Wright's letter is misleading.

At the outset, the Court notes that Ms. George's arguments are unclear and jumbled because she blends legal concepts from statutes other than § 1692e and discusses cases from various outside circuits, some of which use a different standard in cases that deal with unsophisticated consumers in FDCPA cases. For instance, Ms. George alludes that providing the total balance in a dunning letter is necessary. [*See* Filing No. 50 at 9 (arguing that Wright failed to "disclose any amount of the debt" or "explain what it meant by the 'balance' of an ever-changing debt," and that "[t]his failure to provide necessary information violates the FDCPA . . . .").] As Wright points out, the only statute under FDCPA that explicitly states that a letter from a creditor must contain the total balance of the debt is 15 U.S.C. § 1692g and it only applies to initial letters. Wright's letter to Ms. George is not an initial letter, and in any event, Ms. George does not raise a

claim under § 1692g.  Thus the relevant inquiry is not whether it was necessary to include the total balance, but rather whether by failing to include the balance, the letter was misleading.

Moreover, some of the cases that Ms. George cites to in her briefs are from outside this Circuit and use the "least sophisticated debtor" standard, which stands for the proposition that the FDCPA protects "consumers of below-average sophistication or intelligence" who are "especially vulnerable to fraudulent schemes." *Gammon*, 27 F.3d at 1257 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)).  The Seventh Circuit has rejected the "least sophisticated debtor" standard and as stated above has adopted the "unsophisticated consumer" standard because it more closely aligns with the principles of the FDCPA.  *See Gammon*, 27 F.3d at 1257 ("[W]e believe a simpler and less confusing formulation of a standard designed to protect those consumers of below-average sophistication or intelligence should be adopted.  Thus, we will use the term, "unsophisticated," instead of the phrase, "least sophisticated," to describe the hypothetical consumer whose reasonable perceptions will be used to determine if collection messages are deceptive or misleading.").

With the "unsophisticated consumer" standard in mind, the Court will now analyze whether Ms. George's claim was misleading in violation of 15 U.S.C. § 1692e.  As noted above, whether the language in a debt collection letter is misleading is a question of fact.

Ms. George claims that the letter is clearly misleading because it asked for a settlement of seventy-five percent of the balance, but it did not include the total amount.  To support her position, she cites two Seventh Circuit Court of Appeals cases and two district court cases that deal with violations of the FDCPA.  These cases, however, are distinguishable.  In *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 563 (7th Cir. 2004), a debtor sued a law firm after she received an initial dunning letter and subsequent letters regarding a debt that she owed, but the amount listed in the

initial letter was double the original obligation and the letter provided no explanation of the debt. The Seventh Circuit held that at the motion to dismiss stage, the debtor had sufficiently alleged that the initial letter was misleading because it could lead the unsophisticated consumer to make assumptions regarding the reasons the total amount due increased, which causes "a false impression of the character of the debt." *Fields*, 383 F.3d at 566. The Seventh Circuit also rejected the proposition that the debtor could reference the original contract or call the debtor for an explanation of the debt. *Id.* As support, *Fields* cited to *Miller*, 214 F.3d at 875-76, where the Seventh Circuit "rejected the proposition that a debt collector could provide incomplete information in a dunning letter so long as it provided a telephone number for the debtor to call." *Fields*, 383 F.3d at 566. However, *Miller* is distinguishable because it did not deal with a violation of 15 U.S.C. § 1692e, but rather it held that a debt collector violated the FDCPA when it failed to include the total amount due in an *initial* dunning letter as required by § 1692g. 214 F.3d at 875-76. Unlike these cases, the letter that Ms. George received is not an initial letter where the FDCPA requires the debtor to include the amount due and does not create a false impression of the character of the debt simply because it omits the total amount due.

Additionally, Ms. George cites to *Gibson v. Creditors' Serv. of Indiana, Inc.*, 2015 WL 12559887 (S.D. Ind. 2015), and *Moran v. Greene & Cooper Attorneys LLP*, 43 F.Supp.3d 907 (S.D. Ind. 2014). *Gibson* held that a dunning letter was misleading in violation of 15 U.S.C. § 1692e because the letter inaccurately stated that it was from multiple creditors, did not explain from what accounts the total amount pertained to, and did not explain how the sum of the letter was calculated. 2015 WL 12559887, at *5. In *Moran*, the debtor received a dunning letter that included the original amount of a judgment that was entered against the debtor, explained that the interest was continuing to accrue, and included a "current balance" that was $233.99 more than

the original debt.  43 F.Supp.3d at 910.  The district court held that the letter was clearly misleading because "a smaller amount of interest had accrued at the time of the letter" and part of the current balance accounted for the court costs, which was not explained in the letter.  Id. at 915.  Here, on the other hand, Ms. George was not dealing with multiple debts or debt collectors and this letter was not an initial communication.  The authority she relies upon is distinguishable.

Ms. George's letter explained that the debt was from Credit Acceptance, that it offered to settle the debt for seventy-five percent of the total amount due, and that if she was interested in taking advantage of this opportunity, she could call the number listed in the letter.  The letter does not contain the outstanding balance or a specific settlement demand, and it is therefore incomplete.  However, it contains no inaccurate, false, or misleading information.  Given the objective standard of the unsophisticated consumer, Wright's letter to Ms. George is not clearly misleading and does not fall into the third category of § 1692e cases.  See, e.g., White v. Goodman, 200 F.3d 1016, 1020 (7th Cir. 2000) ("Any document can be misread.  The Act is not violated by a dunning letter that is susceptible of an ingenious misreading, for then every dunning letter would violate it.  The Act protects the unsophisticated debtor, but not the irrational one.").

Given that the letter does not contain either the outstanding amount of the debt (from which a 75% offer could be calculated) or a precise settlement demand the Court declines to find that the letter falls in the first category of cases.  At worst, the letter might fall into the second category of § 1692e cases. However, Ms. George has not provided any extrinsic evidence to support that a letter with similar language would confuse "a significant fraction of the persons to whom it is it directed . . . ."  Chuway v. Nat'l Action Fin. Servs., Inc., 362 F.3d 944, 948 (7th Cir. 2004) ("[I]f it is unclear whether the letter would confuse intended recipients of it, then to make out a prima facie case the plaintiff has to go further and present evidence (beyond her own say-so) of

confusion, for example in the form of a carefully designed and conducted consumer survey.")
(citations omitted).

### IV.
#### CONCLUSION

For the reasons noted above, the Court finds that Wright's dunning letter to Ms. George did not violate 15 U.S.C. § 1692e and Defendant is entitled to judgment in its favor.  The Court **ORDERS** the Clerk to vacate the final pretrial conference and trial date.  Final judgment shall enter accordingly.

Date: 11/29/2016

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Carl E. Zapffe
F. STEPHEN SHEETS & ASSOCIATES
czapffe@fenton-mcgarvey.com

John R. Tarter
FENTON & MCGARVEY, PSC
jtarter@fenton-mcgarvey.com

Michael Anthony Eades
JOHN STEINKAMP AND ASSOCIATES
steinkamplaw@yahoo.com

John Thomas Steinkamp
JOHN T. STEINKAMP AND ASSOCIATES
steinkamplaw@yahoo.com